IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES, | § | |
| --- | --- | --- |
| | § | Criminal Action No. |
| v. | § | |
| | § | 3:10-CR-158-K |
| KARLOS MARSHALL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Karlos Marshall's Motion for New Trial (Doc. No. 48) and Mr. Marshall's Motion for Leave to File Reply (Doc. No. 50). The Court has reviewed the motion, the government's response, and the applicable law. Because Mr. Marshall's substantial rights were not prejudiced due to the government's discovery violations, the motion for new trial is **DENIED**. Mr. Marshall's motion for leave to file a reply is **DENIED**.

I.    Background

On February 12, 2010, Mr. Marshall drove a 2010 Chevy Tahoe into the parking lot of a RaceTrac convenience store on Greenville Avenue in Dallas, Texas. Dallas policer officer Craig Bennight pulled into the parking lot shortly thereafter, checking the license plates on all the cars to determine if any of them were stolen or were the subject of other alerts. The license plate check revealed that the Tahoe had recently been reported stolen. Officer Bennight watched Mr. Marshall park the Tahoe and enter the

convenience store. When Mr. Marshall left the store, he walked past the Tahoe and entered a Volvo that was parked at one of the gas pumps. Officer Bennight approached the Volvo and began to question Mr. Marshall about the Tahoe.

What happened next is the source of the primary dispute between the government and Mr. Marshall. At trial, Officer Bennight testified that Mr. Marshall denied any knowledge of the Tahoe and attempted to distance himself from any association with the Tahoe. This testimony was contrary to the government's response to Mr. Marshall's attorney on February 25, 2011, three days before trial. In an e-mail sent from an assistant United States attorney to Mr. Marshall's attorney, the government represented Officer Bennight would testify that Mr. Marshall made four statements during Officer Bennight's investigation or while in custody, including "I just borrowed it from a friend" in response to questions from Officer Bennight about Mr. Marshall's connection to the Tahoe. Doc. No. 48, Exh. 1. Officer Bennight testified to the other three statements by Mr. Marshall contained in the e-mail, or variations of those statements, at trial.

Defense counsel objected to Officer Bennight's testimony as inconsistent with discovery disclosures by the government and moved for a mistrial, which was overruled. Officer Bennight was then questioned outside the presence of the jury regarding Mr. Marshall's statements. After hearing Officer Bennight's explanation, the Court refused to grant a mistrial, but ordered the government to either (1) enter into a stipulation that such an e-mail was provided to the defense as part of discovery as being the statements

made by Mr. Marshall to police officers and that none of the officers remember that statement today or (2) the Court would dictate that into the record as evidence in the case. The government and the defendant did stipulate in open court, and the stipulation was read when the jury returned. The Court denied defense counsel's request for a mistrial.

After questioning Mr. Marshall, Officer Bennight testified he had attempted to gain access to the Tahoe with keys recovered from Mr. Marshall's pocket. The keys did not belong to the Tahoe. A search of the Volvo, the car Mr. Marshall entered after exiting the RaceTrac store, produced the Tahoe's keys. Another Dallas police officer who had responded to the scene, Larry Taylor, began inspecting the Tahoe. Upon entering the Tahoe, Officer Taylor testified the center, armrest console in the front of the Tahoe was open and in an upright position. Inside the console, Officer Taylor testified that he observed a revolver resting on the butt of the gun and the tip of its barrel. The government argued this evidence supported its theory that Mr. Marshall possessed the revolver and placed it in the Tahoe's center console before entering the RaceTrac store, because the revolver had been placed in too precarious a position to have rested there unnoticed while Mr. Marshall was driving. In the jury's presence, Officer Taylor also attempted to testify about large-sized men's clothing that was found in the Tahoe's cargo area, which the government contended supported its theory that Mr. Marshall was at least a frequent user of the vehicle. However, defense counsel objected

and the court sustained the objection because information regarding the clothing had not been turned over to the defense during discovery.

Mr. Marshall was convicted of violations of 18 U.S.C. §§ 922(g)(1) and 924(e), being a convicted felon in possession of a firearm, after a two-day trial on March 1, 2011. Mr. Marshall filed this motion for a new trial on March 15, 2011.

## II. Legal Standard

"A district court's decision to grant or deny a motion for new trial pursuant to [Federal] Rule [of Criminal Procedure] 33 is reviewed for an abuse of discretion." *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004). Generally, motions for new trial are not granted unless there will be a miscarriage of justice or the weight of the evidence preponderates against the verdict. *Id*. at 466. "A new trial is granted 'only upon demonstration of adverse effects on substantial rights of a defendant.'" *United States v. Rasco*, 123 F.3d 222, 228 (5th Cir. 1997) (quotation omitted).

"Prejudice to [the defendant's] substantial rights" is required for a new trial based on discovery errors. *United States v. Garcia*, 567 F.3d 721, 734 (5th Cir. 2009). The defendant must establish that, had the evidence been disclosed to the defense, there is a reasonable probability that the result of the proceeding would have been different. *United States v. Webster*, 162 F.3d 308, 336 (5th Cir. 1998). A "reasonable probability" means the nondisclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *Id*. (quotation omitted).

III. Analysis

Federal Rule of Criminal Procedure 16 provides "[u]pon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." FED. R. CRIM. P. 16(a)(1)(A). The government must also turn over for inspection any documents or objects within its custody or control that are material to preparing a defense, will be used in the government's case-in-chief at trial, or that belong to the defendant. FED. R. CRIM. P. 16(a)(1)(E). As grounds for a new trial, Mr. Marshall argues the government violated Rule 16 in three ways: (1) the government represented a Dallas police officer would testify Mr. Marshall had made several statements when in fact the officer would not so testify; (2) the government did not release statements actually made by Mr. Marshall while in custody; and (3) the government did not disclose the presence of large men's clothing in the vehicle when so requested.

Mr. Marshall's first and second grounds are related. He claims the government's response to his request for statements made to law enforcement contained incorrect information and omitted relevant information, namely that "I just borrowed it from a friend" was provided and "I don't know anything about that Tahoe" was not. The government concedes Officer Bennight testified in a manner inconsistent with the

response provided to defense counsel during discovery: Officer Bennight denied on the stand that Mr. Marshall made any statement resembling "I just borrowed it from a friend." Gov. Resp. at 5. The government asserts, however, that its witness list, Doc. No. 30 at ¶ 1, discloses Officer Bennight would say "[Officer Bennight] asked about the stolen vehicle and Marshall denied ownership." The government argues defense counsel was put on notice of Officer Bennight's testimony through this filing, even though the e-mail referenced different statements. These two statements, "I just borrowed it from a friend" and "Marshall denied ownership" are reconcilable, contrary to the government's assertions: denying ownership is consistent with a statement that the vehicle had been borrowed from a friend. It was reasonable for defense counsel to rely on the government's representation that Officer Bennight would testify Mr. Marshall stated he had borrowed the vehicle from a friend when formulating trial strategy. The government violated Rule 16 by failing to turn over a complete, correct list of Mr. Marshall's statements to law enforcement. The failure to disclose the existence of the clothing found in the back of the Tahoe was also a violation of Rule 16.

Simply showing discovery violations does not mean a new trial is warranted; the defendant must also demonstrate prejudice. *Garcia*, 567 F.3d at 734. In addition to Officer Bennight's testimony that Mr. Marshall attempted to distance himself from the Tahoe and the clothing, the government presented evidence that: (1) Mr. Marshall was observed driving the Chevy Tahoe into the RaceTrac parking lot; (2) Mr. Marshall was

the only person in the vehicle; (3) when Mr. Marshall left the store, he walked past the Tahoe to a Volvo at the gas pump; (4) when officers attempted to open the Tahoe, they found it locked; (5) the keys to the Tahoe were found hidden inside the Volvo; (6) when Officer Taylor opened the Tahoe and sat in the driver's seat, he noticed the center, armrest console was open and completely upright; and (7) when Officer Taylor looked inside the console, he saw a revolver balancing on the tip of its barrel and the butt of the gun. Mr. Marshall's position, that he had borrowed the car from a friend and did not know the revolver was in the vehicle, was undermined by his actions at the RaceTrac and what Officer Taylor found inside the Tahoe. There was a significant amount of evidence against Mr. Marshall apart from the statements and clothing withheld by the government in discovery. This Court cannot say there is a reasonable probability that, if the previously disclosed statements had been recalled by the police officers at trial and the existence of the clothing had been disclosed during discovery, the outcome of the verdict would be different. *Webster*, 162 F.3d at 336.

IV. **Conclusion**

Because Mr. Marshall has not demonstrated prejudice resulting from the government's Rule 16 violations, he is not entitled to a new trial. The motion is **DENIED**. Mr. Marshall's proposed reply, where he asserts he will place the discovered statements in proper order and demonstrate his counsel's reliance upon those statements, will not be of further assistance to the Court; Mr. Marshall has made his

position on those issues clear.  The motion for leave to file a reply is **DENIED**.

**SO ORDERED**.

Signed May 27th, 2011.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE